HELEN C. POLLARD, Plaintiff in Error, *vs.* THE BROADWAY
CENTRAL HOTEL CORPORATION, Defendant in Error.

*Opinion filed October 21, 1933.*

WM. BAIRD & SONS, and POPE & DRIEMEYER, for plaintiff in error.

JOSIAH WHITNEL, H. L. BROWNING, and J. R. Mc-MURDO, for defendant in error.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The plaintiff in error (hereinafter called the plaintiff) brought suit in the city court of East St. Louis against the defendant in error (hereinafter called the defendant) to recover damages for personal injuries sustained by the plaintiff by falling or tripping over an offset in the floor of a corridor in the hotel building of the defendant. The suit was twice tried in the city court. Each trial was before a jury. The jury were unable to agree in the first trial and were discharged by the trial court. On the second trial of the case a verdict was returned in the sum of $9000. A motion for a new trial was interposed, and upon the argument of the motion for new trial the trial court required a *remittitur* of $1500. The *remittitur* was entered. Thereupon the motion for new trial was denied and judgment was entered on the verdict in the sum of $7500. An appeal was taken by the defendant from this judgment to the Appellate Court for the Fourth District. The Appellate Court reversed the case with the purported finding

of fact, as follows: "The court finds as a fact that the plaintiff was not at the time of her injury in the exercise of ordinary care for her own safety." The case has been brought to this court upon *certiorari*.

The case was tried in the court below upon an original declaration consisting of one count and three additional counts. The original declaration charged, in substance, that the defendant, on and prior to the 8th day of October, 1930, owned and operated a hotel in the city of East St. Louis known as the Broadview Hotel; that on the 8th day of October, 1930, the plaintiff was a patron of the defendant's hotel, having arrived at the hotel on the 7th day of October, 1930; that in the hotel building the defendant maintained a certain corridor or passageway leading to the street, containing offsets or steps across the passageway which were not easily discernible and negligently maintained the passageway without the same being adequately lighted, and that while walking along the corridor or passageway, and in the exercise of due care and caution for her own safety, by reason of the negligence of the defendant the plaintiff unavoidably tripped and fell at one of the offsets or steps in the passageway, and was thereby then and there thrown and caused to fall with great force upon the floor of the corridor or passageway.

The first additional count charged the defendant had erected and owned a certain building in the city of East St. Louis and permitted the same to be used as a hotel, which hotel was known as the Broadview Hotel; that the defendant in constructing the hotel constructed a certain corridor, aisle or passageway leading from the interior of the building to the street; that the floor of the corridor, aisle or passageway had the appearance of a smooth, level, polished surface, but that the floor as originally constructed and maintained contained an offset across the passageway which was not easily discernible, which offset constituted a defective and dangerous condition for persons walking

through the passageway; that the plaintiff, while walking along the passageway, by reason of the negligence of the defendant unavoidably tripped and fell at the offset of the passageway and was thereby thrown to the floor of the corridor and injured.

The second additional count charged the ownership and operation of the building in question by the defendant, and charged that in constructing the hotel building the defendant constructed a certain corridor or passageway leading from the interior of the building into the street; that the floor of the corridor or passageway had the appearance of a smooth, level, polished surface but contained an offset across the passageway which was not discernible unless the corridor was artificially lighted, which offset, in the absence of artificial light, constituted a defective and dangerous condition for persons walking through the passageway; that the plaintiff, while walking along and through the passageway, by reason of the absence of light did not know and was unable to ascertain the existence of the offset in the floor, and as a result thereof she unavoidably tripped and fell at the offset in the passageway and was thereby thrown to the floor and injured.

The third additional count charged the ownership and operation of the building in question, and further averred that the building contained quarters suitable for a hotel, and store rooms which had been leased to various parties by the defendant; that on the day in question a portion of the building was being used as a hotel and other portions of the hotel were being used for the purpose of offices and store rooms for the sale of merchandise; that the defendant in constructing the hotel constructed a certain corridor, aisle or passageway leading from the interior of the building to the street, and along the aisle, corridor or passageway on the main floor of the building there were various stores, offices and shops which could be entered through doors from the aisle, corridor or passageway, which aisle,

corridor or passageway the defendant maintained for the use of its various tenants; that owing to the corridor, aisle or passageway being enclosed on either side there was little natural light in the corridor or passageway and it was necessary that the same be artificially lighted in order for pedestrians to pass along in safety; that in constructing the corridor the defendant constructed a floor therein having the appearance of a smooth, level, polished surface, but that the floor, as originally constructed and maintained, contained an offset across the passageway which was not easily discernible, which offset constituted a defective and dangerous condition for persons walking through the passageway in the event the passageway was not well lighted, and that the plaintiff, while walking in the passageway, by reason of the negligence of the defendant unavoidably tripped and fell at the offset in the passageway and was thereby injured.

Each of the additional counts charged that the plaintiff became a patron or guest of the hotel on the 7th day of October, 1930, and was injured on the 8th day of October, 1930, and each of the additional counts charged in apt terms that at and immediately before the time of her injury the plaintiff was in the exercise of due care and caution for her own safety.

Ten special pleas were filed to the three additional counts and five special pleas to the original declaration. The general issue was also filed. Prior to the trial a written stipulation was made and filed, wherein it was agreed that the defendant might introduce any evidence under the plea of general issue that it could under any special plea well pleaded.

The testimony on behalf of the plaintiff's case tended to prove the following facts: The Broadview Hotel is located on Broadway street and faces the south. The building extends easterly and westerly from Fourth street to Fifth street. Fourth street extends northerly and southerly

along the west side of the building and Broadway extends easterly and westerly along the south side of the building. The hotel has two entrances. The one entrance is from Broadway street, the other is from Fourth street. The entrance from Fourth street leads into a vestibule and thence into a corridor leading to the lobby of the hotel. This entrance is approximately ten feet wide and about the center of the building, on Fourth street. The corridor is about sixty feet in length. The main lobby of the hotel is a large open space about seventy-five feet square and located approximately in the center of the building. The ceiling of the main lobby is about twenty-five feet above the floor. The main desk of the hotel, where the plaintiff paid her bill and where she registered, is on the north side of the lobby, about due north from the Broadway street entrance and east of the Fourth street entrance. The elevators are in the southwest corner of the lobby. From the elevator a guest may turn to the right and go to the entrance on Broadway or may turn to the left and go to the entrance on Fourth street. The floor of the lobby, as well as the corridor leading to Fourth street, is constructed of a composition known as terrazzo. There is an elevation of approximately twelve inches between the sidewalk level on the Fourth street entrance and the level of the lobby in the hotel. In this corridor leading from the lobby to Fourth street there are constructed two offsets or steps approximately six inches in height and about sixteen feet apart. Going from the lobby to Fourth street the first offset or step is about thirty feet from the west entrance of the corridor. Along this corridor are four doors leading into four office rooms, two of the office rooms being south of the corridor and extending to the front of the building on Broadway, and two of the doors to the north of the corridor leading into office rooms to the north of the corridor. The lobby was illuminated by six ceiling-lights practically against the ceiling and two large suspended clusters of lights, one

being directly in front of the desk and one near the entrance on Broadway. The corridor also had lights constructed therein, but none of which lights in the corridor were burning at the time of the accident.

Photographs were offered in evidence by the plaintiff showing the portion of the interior of the lobby and the corridor in question. No question is made as to the accuracy of the photographs, nor is there any evidence offered contradicting the appearance of the objects as disclosed by the photographs. An examination of the photographs discloses that looking west down the corridor towards the Fourth street exit, the offsets—particularly the first offset as one leaves the lobby of the hotel—are not easily discernible, if discernible at all. The floor of the corridor as revealed by the photographs shows a smooth, level surface.

The plaintiff is the wife of a physician and lives in Omaha, Nebraska. She, together with her daughter, three grandchildren and a maid, was driving from Omaha to Atlanta, Georgia, in an automobile, and arrived at the Broadview Hotel between five and five-thirty o'clock in the evening of October 7. She, with the knowledge of the defendant's clerk then on duty, parked her car at the Fourth street entrance for the night and entered the hotel through this same entrance. She had never been in this hotel before. She never did go out of the hotel or enter the hotel by means of the Broadway street entrance. She remained over night at the hotel and left a call for five o'clock the next morning. She got up at that hour, went to the office of the hotel, paid her bill and returned to her room to notify the remainder of the party that she was ready to start. From her room she came to the ground floor in an elevator and started directly towards the Fourth street entrance, down the corridor in question, being the same route she had taken when she arrived at the hotel. In leaving the hotel by means of the corridor she fell at the first offset and sustained severe injuries. At the time she fell the bell-

boy stated that he was about to turn on the lights in the corridor. The evidence of the plaintiff was that she did not know that the offset in question was in the corridor and that she was not able to see the same prior to her falling. There was no proof in the record of any sign warning guests of these offsets in the Fourth street entrance, nor was there any proof that any of the defendant's agents or servants notified the plaintiff not to use such exit or that the same was dangerous.

In the consideration of the case we have not undertaken to weigh the evidence, although there is a conflict in the evidence as to whether or not the plaintiff was familiar with the Broadway street exit or entrance. In the examination of the case she is entitled to the benefit of all the facts that the evidence tends to prove and all just inferences that can be drawn therefrom, and the evidence most favorable to her must be taken as true. (*Libby, McNeill & Libby* v. *Cook,* 222 Ill. 206; *Molloy* v. *Chicago Rapid Transit Co.* 335 id. 164.) What is the proximate cause of an injury is always a question of fact for the jury. *Phillabaum* v. *Lake Erie and Western Railroad Co.* 315 Ill. 131.

The proprietor of a hotel to which he invites the public to come in order that he may make gains thereby has no right to permit the existence of such dangerous and unguarded offsets as this one was, so that the slightest mistake on the part of the guest might result in injury to him. (*Hayward* v. *Merrill,* 94 Ill. 349; *Chicago City Railway Co.* v. *Fennimore,* 199 id. 9; *Pauckner* v. *Wakem,* 231 id. 276; *Downing* v. *Merchants Nat. Bank of Greene,* 192 Iowa, 1250, 184 N. W. 722, 20 A. L. R. 1138; *Pelton* v. *Schmidt,* 104 Mich. 345.) Under the law of this State the defendant owed a duty to the plaintiff, who was in its hotel as a paying guest, to exercise reasonable care and prudence to provide a safe and suitable entrance to the hotel and have such entrance so constructed and maintained

that guests would not be liable to fall over or trip down a step by reason of the misleading view afforded by the floor of the entrance to the hotel building. The plaintiff having entered the hotel by means of the corridor in question and having parked her car near such entrance with the knowledge of the agent of the defendant, it was only natural that she should seek to leave the hotel by the same entrance through which she came, and the defendant should have anticipated that fact and kept the corridor lighted or have warned the plaintiff of the steps in such corridor. The law does not charge one with anticipating dangers and negligent conditions, but he may assume that others have done their duty to give proper warning of hidden dangers. (*Chicago City Railway Co.* v. *Fennimore, supra.*) The plaintiff was a stranger in the hotel, and as such had a right to assume that the entrance to the hotel, maintained for the purpose of carrying on the hotel business of the defendant, would be maintained in such condition as to make it reasonably safe for the guests of the hotel, and that such guests would not be liable to step into dangerous pitfalls by reason of the construction of the floor of the corridor entering the hotel. Situated as she was, she had no reason to expect danger or to foresee that a very high degree of watchfulness was required on her part to discover and avoid danger in traveling along the corridor leading from the lobby of the hotel to Fourth street. She was not bound to anticipate negligence on the part of the defendant in maintaining an entrance to the hotel, but, on the other hand, she had a right to presume that the proprietor of the hotel would perform the duty enjoined on him by law and maintain suitable entrances to the hotel so that guests in traveling such entrances would not be likely to be injured. Where one suddenly comes upon an unexpected opening in a passageway which he is traveling through at the invitation, either express or implied, on the part of the proprietor of the building, the case is en-

tirely different from one where a person walks directly into an opening, which opening he would have seen for some distance had he looked as he walked, and where ordinary care could not have failed to discern or discover the opening.

It is contended by counsel for the defendant that this court is bound by the finding of fact made by the Appellate Court; that under section 120 of the Practice act the finding by the Appellate Court is a finding upon a mixed question of law and fact and as such is final and conclusive. In support of this contention counsel cite the following cases: *Curtis* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 240 Ill. 218; *Paine* v. *Sheridan T. & S. Bank,* 342 id. 342; *City of Chicago* v. *Hagley,* 338 id. 479; *Hadley* v. *Union T. & S. Bank,* 308 id. 175.

*Curtis* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co. supra,* while it is a case that was tried by jury, yet it was decided prior to the case of *Mirich* v. *Forschner Contracting Co.* 312 Ill. 343, and in so far as the *Curtis case* is in conflict with the *Mirich case* the same is overruled.

In *Paine* v. *Sheridan T. & S. Bank, supra, City of Chicago* v. *Hagley, supra,* and *Hadley* v. *Union T. & S. Bank, supra,* each of the three cases last cited was a case tried before the judge without the intervention of a jury. There is a broad distinction between the application of section 120 of the Practice act to cases at law tried by a jury and to like cases tried before the court without a jury. Section 120 is binding as to the facts found by the Appellate Court where a jury is waived or where the trial court was justified in directing a verdict because the evidence did not tend to establish a cause of action. (*Myers* v. *Northwestern Elevated Railroad Co.* 318 Ill. 24.) The case at bar being a case tried by a jury, if section 120 of the Practice act were given the construction urged upon this court by the defendant, then said section would be unconstitutional and would deprive a plaintiff of his right

to a trial by jury as guaranteed to him by the constitution of this State.

Under the later decisions of this court the cases cited and relied upon by the defendant under which it contends that this court is bound by the finding of fact of the Appellate Court do not sustain that contention. In an action at law tried by a jury, where the evidence for the plaintiff tends to support the cause of action, the Appellate Court is not authorized by section 120 of the Practice act to reverse a judgment for the plaintiff and make a finding of fact without remanding the cause to the trial court. To permit such practice would be a palpable violation of the constitution, which guarantees to persons in cases at law the right of trial by jury. While section 120 provides for review by the Appellate Court of cases at law, it does not contemplate that either of the parties litigant shall be deprived of the right of a trial by jury. If in any method provided by law the verdict is set aside the parties are remitted to their original rights as they stood at the time of the first trial, and until the verdict of the jury on the facts is set aside in some legal manner there is no conclusive or final decision as to the facts. This rule of law is *stare decisis* in this State. *Mirich* v. *Forschner Contracting Co. supra; Sinopoli* v. *Chicago Railways Co.* 316 Ill. 609; *Myers* v. *Northwestern Elevated Railroad Co. supra; Collins* v. *Kurth,* 322 Ill. 250; *Kinsey* v. *Zimmerman,* 329 id. 75; *Dick & Bros. Brewing Co.* v. *City of Quincy,* 335 id. 368.

Under the authorities, then, this court not only has the legal right, but it is its duty, to review the evidence in this case for the purpose of determining whether or not there is any evidence tending to establish plaintiff's cause of action. In reviewing such evidence, we must, of course, do so in the light of certain legal principles. To authorize this court to say, as a matter of law, that there was such contributory negligence on the part of the plaintiff or that

she was guilty of the lack of such ordinary care or caution for her own safety as to defeat her recovery, we must be able to say that all reasonable and unbiased men, acting within the limits prescribed by the rules of law, would agree that she was not, at and for a reasonable time prior to the injuries sustained by her, in the exercise of due care and caution for her own safety and that as a result thereof she contributed to the injuries received by her. (*Petro* v. *Hines,* 299 Ill. 236; *Mahlstedt* v. *Ideal Lighting Co.* 271 id. 154; *Illinois Central Railroad Co.* v. *Anderson,* 184 id. 294; *Lake Shore and Michigan Southern Railway Co.* v. *Ouska,* 151 id. 232; *Molloy* v. *Chicago Rapid Transit Co. supra.*) We are not able to say, after a review of the evidence for the purpose aforesaid and in accordance with the established rules of law, that the plaintiff failed to establish the exercise of due care and caution on her part for her own safety. The question as to whether she was or was not in the exercise of ordinary care and caution for her own safety must be solved by a jury.

The plaintiff contends that the judgment of the trial court should be by this court affirmed. To do that is not within the power of this court. This court has no right to review the evidence in the case except for the purpose, as hereinbefore related, of deciding whether or not there was evidence sufficient to go to the jury on the question of the plaintiff's cause of action. *Kinsey* v. *Zimmerman, supra.*

The judgment of the Appellate Court is reversed and the cause remanded to that court, with directions to consider the assignments of error other than the one here decided, and to either affirm the judgment of the trial court or to reverse the judgment and remand the cause.

*Reversed and remanded, with directions.*