(No. 4150

BARBARA VORIS MERKLE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 7, 1949.*

*Petition of Claimant for rehearing denied February 14, 1950.*

JOSEPH D. RYAN, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

The facts disclose that the claimant, together with her mother, Leona Merkle, were house guests of Mrs. Green, wife of Governor Dwight H. Green, at the Executive Mansion in Springfield, Illinois, on May 9, 1948.

Claimant testified that she was a reporter for the Chicago Tribune; that around 12:30 in the morning she went to Gloria's room, the daughter of the Governor, to get some phonograph records, this room being on the second floor, and that was the last thing that she re-

membered with reference to the accident. There was no testimony on her part as to the condition of the stairway, the carpet or the flooring.

Leona Merkle, the mother of the claimant, testified that the accident occurred between 12:30 and 1:00 in the morning; that her attention was attracted when her daughter fell over the balustrade; that prior to the accident she had occasion to inspect the condition of the steps when she came down for dinner; that she testified that the railing was about 3½ feet high; that the carpet was loose, that a little piece was sticking up on the carpet not more than an inch or an inch and a half on the first step; that the floor to the side of the carpet was highly polished, and that the stairs were steep; that there was subdued lighting from the light at the top of the stairway with a frosted globe and one at the foot of the stairway; that there was a very large chandelier, but when the family was not home it was not on and that the rise in the carpet was at the edge on the first step after leaving the second floor landing.

Helen Vandiver testified that she was employed at the Executive Mansion for six years, and that she had general care and the duty of maintenance in the Executive Mansion; that she had known the claimant for five years and that her habits were good for being careful and cautious; that the rugs were vacuumed every day; that about three times the rugs came loose and that the tacks would come out and that Louis Harvison was the one who put the tacks back; that the rug did not become uneven, but just loose, and you could put your hand under it; that at the top of the stairway the light was on the wall across from the stairs and that there was a light in the dome, and that without the dome light the lighting was not good; that no one had fallen on this par-

ticular stairway and that the carpeting was in good shape and that she didn't know that the carpeting was loose on May 9th, and didn't notice any wrinkles in the rug at the time of the accident, and that she had been on the stairway preceding the accident and didn't notice anything unusual in the condition of the stairway; that the claimant had been a house guest at the Mansion before on several occasions and at least more than once a year; that the claimant had been up and down the same stairway on various occasions both in the daytime and at night.

There can be no question from the facts in this case, and from the law applicable thereto, that the State retained control of the Governor's Mansion for the purpose of maintenance and upkeep. The claimant contends in such a situation that it is comparable to a landlord and tenant relationship. She further contends that invitees, such as herself, while upon the premises of the Mansion are entitled to the exercise of due care on the part of the property owner for their protection. In support of this last contention she cites the case of *Fisher* v. *Jansen,* 30 Ill. App. page 91, which involved a suit against the owner of a building by a person stopping with one of the tenants. The appellee was injured by walking through the open door of an elevator shaft in the building, while the elevator cab was above, and the person fell into the pit below. The owner of the building employed the person in charge of the elevator. The court on page 93 held:

"The proprietors of such houses could hardly expect to find tenants for and profit from their buildings, if they imposed unreasonable restraints upon the social life of the tenants. The proprietor invites tenants, and thereby impliedly invites the persons who are properly visitors or guests of the tenants, and they come within the protection of the principle that a person, while upon the premises of another by invitation, express or implied, is entitled to the exercise of due care

on the part of the property owner for his protection. Thompson, Meg., 313; *Bennett* vs. *R. R.*, 102 U. S. 577; *Hayward* vs. *Merrill*, 94 Ill. 349."

The Court finds no fault with the rule of law enunciated in the Jansen case, but each particular case is governed by its own set of facts.

It can be conceded that, insofar as the maintenance of the stairway is concerned, said stairway was under the control of the State. Under such circumstances it was the duty of the State to see that said steps were properly maintained. The question then resolves itself to the point, was the State guilty of negligence in the maintenance of said stairway and was such negligence the proximate cause of the injuries to claimant.

It cannot be concluded from the evidence that the construction of the stairway had anything to do with the injury in question. The stairway in its construction was known to the occupants of the Mansion, being the Governor and his family, and in fact, according to the testimony, has been in that same state of construction since the year 1885. The evidence does not show that the stairway was negligently maintained. It is apparent that the claimant was not a stranger, but had visited the Mansion many times and was familiar, not only with the construction of the stairway, but the carpeting and lighting, and general nature of said stairway. Under similar circumstances if the Governor was injured by falling down the stairs, or members of his immediate family, a recovery could only be had against the State for a defective condition of which the State had notice. The fact that the claimant was an invitee does not make the State an insurer for any injuries that she might sustain.

The State would be liable if it had failed to keep the stairway in repair, and can only be charged with negligence for such failure after notice of the existence

of the dangerous condition, or after the defect has continued for a sufficient length of time to charge it with constructive notice.

Even in the cases where the landlord reserves control over parts of the building and premises used in common by all tenants, and where it is held he is under the implied obligation to use reasonable diligence to keep in a safe condition the part over which he so reserves control, it is found that the landlord can only be charged with negligence for failure to repair after notice of the existence of the dangerous condition of the same, or after the defect has continued for a sufficient length of time to charge him with constructive notice thereof. *Burke* v. *Hulett,* 216 Ill. 545, page 550. *National Builders Bank* v. *Schuhan,* 319 App. 546 at 552.

One of the conditions complained of by the claimant was that there was improper lighting on the stairs. Leona Merkle, mother of the claimant, testified, as shown on page 13 of claimant's brief, that following dinner she used the stairs and that she noticed that on the edge of the first tread down from the platform near the railing, the carpet was loose. This definitely shows that Leona Merkle, an elderly woman who contended that her eyesight wasn't good, could see a small rise in the carpet and apparently the light was sufficient for this purpose.

As to the hand railing, this was a condition fully known and not concealed, and in the Court's opinion cannot be used for a basis of recovery.

There is no testimony in the record that the Governor or his wife had complained about the condition of the floor, the carpet, the railing or other facts concerning said stairway. On the contrary it is shown that the carpet was vacuumed every day and that there were no defects of any kind observed immediately after the acci-

dent with reference to any defective condition in the carpet.

As to how the injury occurred, whether the claimant slipped, tripped or fell, we do not know. The Court does not feel that it is necessary to go into the question as to whether the claimant was in the exercise of due care and caution for her own safety, for the reason we feel that there has been no proof of negligence on the part of the State, and certainly no negligence that was the proximate cause of the injury. The evidence wholly fails to show a defective condition which the State was liable for, and without any notice proven of any defective condition on the part of the State, this element of proof being entirely lacking, the claim is denied.